IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:16-cr-00270-JO-2 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE OCTAVIO-GONZALEZ | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

Defendant Jose Octavio-Gonzalez moves to have the Court reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 526. He requests that his sentence be reduced to time served. He claims that his medical conditions in light of the COVID-19 pandemic provide extraordinary and compelling reasons for compassionate release. The government opposes his motion. For the reasons that follow, I DENY Defendant's motion for compassionate release.

## BACKGROUND

Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute heroin. Currently incarcerated at FDC SeaTac, Defendant has served approximately 65% of his 100-month sentence and has a projected release date of September 14, 2023. *Id.* at 2-3. He filed a request for compassionate release with the warden in November 2020, contracted COVID-19 the following month, and subsequently received two doses of the Moderna vaccine. ECF No. 533-1 at 12, 58.

1  Opinion and Order

## LEGAL STANDARD

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). However, Congress has expressly authorized a district court to modify a defendant's sentence in three limited circumstances, including granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP), Congress expanded the statute in the First Step Act of 2018. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018) (FSA). Now, a defendant may bring a motion for compassionate release, but only *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) exhausting all administrative appeals after the BOP denied the defendant's petition or (b) thirty days have elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Pursuant to the FSA, a court may reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction; . . . and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling" other than providing that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t).

The "applicable policy statement by the Sentencing Commission" for sentence reductions was last amended before the FSA passed and is found in the Application Notes to United States Sentencing Guidelines (U.S.S.G.) § 1B1.13. Application Note 1 of the policy statement commentary defines extraordinary and compelling reasons justifying compassionate release.

U.S. Sentencing Guidelines Manual § 1B1.13, cmt. n.1 (U.S. Sentencing Comm'n 2018). Application Note 4 directs courts to consider the sentencing factors found in 18 U.S.C. §3553(a) and determine whether the defendant is a danger to the safety of the community before granting compassionate release. *Id*. at cmt. n.4. Although applying only to motions filed by the BOP director and not those filed by a defendant, the policy statement "may inform a district court's discretion for §3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda,* 933 F.3d 797, 802 (9th Cir. 2021).

The Sentencing Commission's policy statement defines extraordinary and compelling circumstances to include among other factors the medical condition of the defendant, including a terminal illness, or any non-terminal illness "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines Manual § 1B1.13 *at* cmt. n.1(A).

While the COVID-19 global health crisis is an exceptional event, even so, compassionate release remains "rare" and "extraordinary," and courts routinely deny claims from inmates absent a showing of truly exceptional circumstances. *United States v. Hamman*, No. 3:16-cr-185-SI, 2020 WL 3047371, at *5 (D. Or. June 8, 2020); *United States v. Valdez,* No.3:19-cr-323-IM-01, 2021 WL 325715, at *3 (D. Or. Feb. 1, 2021). The existence of COVID-19 cannot alone justify compassionate release. As the United States Court of Appeals for the Third Circuit explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.

3  Opinion and Order

*United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

To demonstrate extraordinary and compelling reasons for compassionate release, defendants should show that they are particularly susceptible to serious illness or death if they contract COVID-19, usually as a result of one or more underlying comorbidities. *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021). And '[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-cr-130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb 12, 2020); *United States v. Valdovinos*, No. 3:18-cr-497-SI-03, 2020 WL 7711363, at *2 (D. Or. Dec. 29, 2020).

Defendants bear the burden to establish both that they have satisfied the procedural requirements for judicial review and that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

Defendant contends that he suffers from multiple underlying health conditions that put him at risk for severe illness or death if he is reinfected with COVID-19. He claims to have Type-2 diabetes, hypertension, hyperlipidemia, a history of smoking, and obesity. Defendant's medical records support that he is obese (BMI 31.7) and has a history of smoking, but do not confirm any of the other conditions he lists. In November 2020, he denied having diabetes and high blood pressure. ECF No. 530 at 24. In fact, his blood pressure in February 2020 was 108/68. *Id.* at 34. According to his medical record, Defendant's hypertension, hyperlipidemia, and Type-2 diabetes are listed as "Resolved." ECF No. 533-1 at 54. Defendant does not take any prescription or over-the-counter medications for any of his claimed medical conditions. *Id.* at 36. Defendant also claims to have lingering symptoms after recovering from COVID-19

including a fuzzy memory, difficulty in focusing, reduced eyesight, watery eyes, trouble breathing, and post-vaccination nosebleeds, for which he has not received medical attention. None of these conditions is mentioned in the medical records Defendant submitted. However, the medical record indicates that Defendant failed to report for two chronic care appointments in February and March of this year. ECF No. 533-1 at 1-2.

The Centers for Disease Control and Prevention (CDC) lists obesity and a history of smoking as factors that increase an individual's risk for serious complications from COVID-19. *People With Certain Medical Conditions,* CDC (May 13, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited May 24, 2021). This has led some courts to conclude that inmates with multiple health conditions are at an increased risk of serious illness or death from COVID-19 and provide extraordinary and compelling reasons justifying compassionate release. *See United States v. Hancock*, No. 3:12-cr-00015 (VAB), 2021 WL 71451, at *5-*6 (D. Conn. Jan.8, 2021) (granting compassionate release to a defendant who was overweight and hypertensive); *United States v. Correa*, No. 08-CR-1026 (VEC), 2020 WL 7490098, at *5 (S.D.N.Y. Dec. 21, 2020) (granting compassionate release to a defendant who was overweight and asthmatic). However, other courts have concluded that a history of smoking, in combination with other health conditions, does not establish an extraordinary and compelling reason justifying compassionate release. *See, e.g.*, *United States v. Coilton*, No. 1:18-cr-00338-MC, 2021 WL 1197748, at *2 (D. Or. Mar. 29, 2021) (denying compassionate release to a 25-year-old obese inmate with asthma and a history of smoking); *United States v. Benham*, No. 3:19-cr-00146-HZ-1, 2021 WL 1147145, at *2 (D. Or. Mar. 25, 2021) (denying compassionate release to a 55-year-old inmate with past latent tuberculosis infection, seizures, hypertension, Hepatitis C, bipolar

disorder, gastroesophageal reflux disease with gastritis, pancreatitis, and a history of smoking and IV drug use).  The Court does not need to decide if Defendant's confirmed medical conditions of obesity and a history of smoking alone establish an extraordinary and compelling reason justifying compassionate release because Defendant has already had COVID-19 and "recovered" and has been vaccinated against a future infection.

Defendant's recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with Defendant's underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release.  Although vaccines are not one hundred percent effective, the CDC states that "[a]ll COVID-19 vaccines currently available in the United States have been shown to be safe and effective at preventing COVID-19." *Benefits of Getting a COVID-19 Vaccine* CDC (April 12, 2021)*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html* (last visited May 24, 2021).  Vaccines are particularly effective at preventing "severe illness and death."  *Ensuring COVID-19 Vaccines Work,* CDC (May 10, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html* (last visited May 24, 2021).

Defendant received the Moderna vaccine.  According to the CDC, during clinical trials, the Moderna vaccine had a 94.1% efficacy rate (*Moderna COVID-19 Vaccine Overview and Safety, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html*).[1]  The vaccine has been found with high certainty to prevent symptomatic COVID-19.  *Morbidity*

---

[1] Recently, the CDC reported that under real-world conditions, the Moderna vaccine was 90% effective against COVID-19.  *Interim Estimates of Vaccine Effectiveness of BNT162b2 and mRNA-1273 COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Health Care Personnel, First Responders, and Other Essential and Frontline Workers — Eight U.S. Locations, December 2020–March 2021, https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm,* CDC (April 2, 2021) (last visited May 24, 2021).

*and Mortality Weekly Report (MMWR), The Advisory Committee on Immunization Practices' Interim Recommendation for Use of Moderna COVID-19 Vaccine—United States, December 2020,* https://www.cdc.gov/mmwr/volumes/69/wr/mm695152e1.htm?s_cid=mm695152e1_w (last visited May 24, 2021). While new variants of COVID-19 have emerged, "[s]o far, studies suggest that the current authorized vaccines work on the circulating variants." *About Variants of the Virus that Causes COVID-19,* CDC (May 20, 2021) https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftransmission%2Fvariant.html (last visited May 24, 2021).

To be clear, while Defendant is not one hundred percent protected from COVID-19, his vaccination provides significant protection from serious illness or death. The CDC reported that, as of May 17, 2021, of the 123 million people who have been fully vaccinated, only 1949 people (.000016 %) have been hospitalized or died due to breakthrough cases. *COVID-19 Vaccine Breakthrough Case Investigations and Reporting,* CDC, *https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html,* (last visited May 24, 2021). Current CDC guidelines allow fully vaccinated individuals to resume activities without wearing masks or physically distancing. *Interim Public Health Recommendation for Fully Vaccinated People, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html* (last visited May 24, 2021).

The sum of this data demonstrates to the Court that, as a result of his vaccination, Defendant now has significant protection against serious illness or death should he contract COVID-19. Currently, at FDC SeaTac where Defendant is housed, no inmates and one staff member are diagnosed with COVID-19 (C*OVID-19 Cases*, *www.bop.gov/coronavirus* (last visited May 24, 2021)), and 286 of the 637 inmates have been fully vaccinated. *COVID-19*

*Vaccination Implementation, www.bop.gov/coronavirus* (last visited May 24, 2021).

Accordingly, the Court concludes that Defendant has not demonstrated that his underlying conditions, in combination with the remote possibility of a COVID-19 infection, provide extraordinary and compelling reasons to grant his motion for compassionate release.

## CONCLUSION

For these reasons, the Court DENIES Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 526.

IT IS SO ORDERED.

DATED this 25th day of May, 2021.

/s/ Robert E. Jones_____
Robert E. Jones
Senior District Court Judge